IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRIAN REED, B.R.**, a minor, by her guardian ad litem, Roxanne Sayer,<br><br>Plaintiffs,<br>v.<br><br>**CITY OF MODESTO, a municipal corporation; Chief of Police HARDEN, in his official capacity; Police Officer RON ZIYA, and Police Officer CAELI KOEHLER, in their individual and official capacities,**<br><br>Defendants.<br>_____/ | 1:11-cv-1083-AWI-GSA<br><br>**ORDER DENYING MOTIONS FOR NEW TRIAL AND GRANTING IN PART DEFENDANTS' MOTION TO AMEND JUDGMENT**<br><br>(Docs. 251 and 254) |

**I. Introduction**

Defendants City of Modesto and Officer Ziya ("Defendants") and Plaintiff Brian Reed ("Plaintiff") have separately filed motions pursuant to Rule 59. Defendants seek a new trial or amendment of the judgment and Plaintiff seeks a new trial only on the issue of damages. The parties agree that the verdict returned by the jury is invalid, albeit on different bases. Plaintiff contends that damages were "grossly inadequate [and] manifestly unjust" in light of the "substantial evidence about the nature and extent of [Plaintiff's] injuries, both physical and psychological, and of his special damages: loss of earnings, and earning capacity and costs related to his injuries." Doc. 251 at 3, 5. Plaintiff contends that retrial on the issue of damages is the appropriate remedy. Defendants, on the other hand, argue the verdict is invalid because (1)

1

the jury abdicated its role when it rendered a compromise verdict; (2) the court erred in removing a special verdict question regarding causation as to Plaintiff's § 1983 claim; and (3) the judgment reflects that the full $100,001.00 verdict is entered against the City of Modesto. Doc. 254 at 6-7. Defendants ask the court to grant a new trial, vacate the judgment as to the § 1983 claim, or amend the judgment against the City of Modesto.

For the following reasons, the Court will deny Plaintiff's motion and will deny in part and grant in part Defendants' motion.

## II. Background

On December 30, 2010, officers of the Modesto Police Department were called to the residence of Plaintiff Brian Reed and Susan Nava. Ms. Nava informed the police operator that Plaintiff Reed was suicidal and sought help to stop him from hurting himself. Upon arrival, Defendant Ron Ziya and Officer Caeli Koehler ("Responding Officers") saw Ms. Nava and Plaintiff Reed physically struggling inside; Plaintiff Reed had a knife. The Responding Officers ordered the two to separate and for Ms. Nava to come towards them. Ms. Nava complied and exited the room. The Responding Officers told Plaintiff Reed to drop the knife but he did not comply. Plaintiff Reed moved his foot and Defendant Ziya shot at him multiple times, hitting him three times.

Plaintiff Reed sued Defendant Ziya and Defendant City of Modesto, alleging Defendant used excessive force in shooting him. The jury trial began on April 28, 2015. The case was submitted to the jury on the questions of 42 U.S.C. § 1983 liability for excessive force in violation of the Fourth Amendment, negligence liability, and damages on May 12, 2015. Doc 210. The jury initially returned a verdict in favor of Plaintiff, awarding only $1.00 in damages in the blanks provided. Doc. 219; Doc. 271 at 6-7.[1] After conferring with counsel and over Plaintiff's objection, the Court sent a supplemental verdict form to the jury, allowing the jury to fill in its finding of past medical expenses. Doc. 220. The jury returned a verdict on May 14, 2015 in favor of Plaintiff Reed, finding Defendant Ziya used excessive force and was negligent;

---

[1] The past medical expenses column of verdict form had prefilled with the $100,000.00 amount stipulated by the parties. Doc. 219 at 3. However, the jury listed $1.00 as Plaintiff's total damages.

the jury awarded a total of $100,001 which comprised of $100,000 in past medical expenses (a figure the parties had stipulated to) plus $1.00 in noneconomic damages. Doc. 219. The jury also found Plaintiff contributorily negligent; it apportioned 95% of the fault for Plaintiff's harm to Plaintiff and 5% of the fault to Defendant Ziya. Doc. 219.

At the close of the Plaintiff Reed's case in chief on May 7, 2015, Defendants made a Fed. R. Civ. Proc. 50(a) motion for judgment as a matter of law, asserting Defendant Ziya used reasonable force, or in the alternative, that he was entitled to qualified immunity. Doc. 200. The motion was denied. Defendants made a renewed Fed. R. Civ. Proc. 50(b) motion for judgment as a matter of law. Doc. 235. That motion was also denied. Doc. 250.

### III. Legal Standard

**A. Motion for New Trial**

Rule 59(a) provides that "[a] new trial may be granted...in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Rule 59 does not specify the grounds on which a motion for a new trial may be granted. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). Rather, the court is "bound by those grounds that have been historically recognized, *id.*, including, but not limited to, claims "that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." *Molski v. M.J. Cable, Inc*., 481 F.3d 724, 728 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)) (internal quotation marks omitted). Simply, a district court ruling on a Rule 59 motion may "weigh the evidence, make credibility determinations, and grant a new trial for any reason necessary to prevent a miscarriage of justice." *Experience Hendrix L.L.C. v. Hendrixlcensing.com Ltd.*, 762 F.3d 829, 841 (9th Cir. 2014).

The trial court should grant a new trial only if the jury's verdict is so clearly contrary to the clear weight evidence that allowing the verdict to stand would result in a manifest miscarriage of justice. *See Molski*, 481 F.3d at 729; *see also Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (Where a new trial is sought on the basis that

the jury returned a verdict against the clear weight of the evidence, the court should grant the motion only if—considering all of the evidence—he or she "is left with the definite and firm conviction that a mistake has been committed.") (quoting 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2806, at 48-49 (1973)).

**B. Motion to Vacate Judgment**

Rule 59(e) allows a party to move the court to vacate or amend its judgment. Fed. R. Civ. P. 59(e). "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011) (citation omitted). Like granting a new trial, vacating or amending a judgment is "an extraordinary remedy which should be used sparingly." *Id*. at 1111 (internal quotation marks and citation omitted).

## IV. Discussion

**A. Plaintiff's Motion**

Plaintiff has thoroughly outlined the testimony of the six experts that he called to substantiate his physical, psychological, and special damages. Doc. 251 at 5-30. Plaintiff explains that the expert testimony on the issue of damages was "virtually undisputed"; Plaintiff sustained "severe and permanent physical and psychiatric injuries," he will live the rest of his life with chronic pain, he is permanently disabled, he lost past and future wages, and he has substantial past medical expenses and will have substantial future medical expenses. Doc. 251 at 31. Defendants did not present their own experts to offer an opinion regarding the nature, extent, or valuation of Plaintiff's injuries. However, Defendants cross-examined each of Plaintiff's experts, challenging the experts' methodology and conclusions, Doc. 262 at 206-210, Doc. 265 at 208, and pointing out that some of Plaintiff's medical and psychological conditions preceded the incident, Doc. 262 at 210-216, 221, 225; Doc. 265 at 194-195, 204, that there were alternate explanations for Plaintiff's mental decline, Doc. 262 at 222, that their expert opinions changed,

Doc. 265. at 79-80, 126-127, that Plaintiff's physical condition improved since the incident, Doc. 265 at 189-192, 210-211, that before the incident Plaintiff had been terminated from employment for cause, Doc. 265 at 132-133, and that the calculations assumed that Plaintiff would be unable to ever return to work although that may not have been the case, Doc. 265 at 140-141, 186.

Plaintiff now challenges the validity of the jury's award of damages, contending that the award of $100,000 for past medical expenses, $0 for future medical expenses, $0 for past lost earnings, $0 for future lost earnings, and $1 for noneconomic damages is inadequate as a matter of law and inconsistent with the evidence presented. Plaintiff seeks a new trial as to damages.

This Court would grant a new trial if the verdict was contrary to the weight of the evidence or necessary to prevent miscarriage of justice. The matter before the Court presents neither situation. As the Court instructed the jury, in considering expert testimony the jury was permitted to "accept it or reject it or give it as much weight as [the jury] th[ought] it deserve[d]." Doc. 218 at 17; *see* Ninth Circuit Model Instruction 2.11 (2007). In arriving at a damages award, the jury was required to determine what damages Plaintiff proved by a preponderance of the evidence. Doc. 218 at 40; *see* Ninth Circuit Model Instruction 5.1 (2007). It appears that the jury determined, after considering all of the evidence presented, that Plaintiff had not proven by a preponderance of the evidence that Plaintiff was entitled to future medical expenses, past lost earnings, or future lost earnings. Doc. 219 at 3. The jury appears only to have found that the only amount proved was the $100,000.00 in past medical expenses to which the parties stipulated. *Id.* Based on the testimony presented at trial, the Court cannot conclude that the jury's finding was contrary to the weight of the evidence.

As to the Section 1983 action, it appears that the jury found a violation of Section 1983 and attempted to either (a) award nominal damages in the amount of one dollar or (b) award Plaintiff non-economic damages at one dollar because it valued his injury at that amount. Doc. 218 at 44; *see* Ninth Circuit Model Instruction 5.6 (2007). The record gives no indication as to whether the jury understood that awarding $100,000.00 in past medical expenses obviated need to award one dollar as nominal damages. However, in absence of some indication that the jury did not follow the instruction given, the Court presumes that the jury followed those instructions,

5

*United States v. Brown*, 784 F.3d 1301, 1306 (9th Cir. 2015) ("[W]e generally presume that juries follow a court's instructions."), to award nominal damages only if Plaintiff "failed to prove damages as defined in the[] instructions." Doc. 218 at 44.

In sum, this Court does not find that the jury's verdict is so clearly contrary to the clear weight evidence that allowing it to stand would result in a manifest miscarriage of justice. *See Molski*, 481 F.3d at 729.

**B. Defendants' Motion**

Defendants argue that (1) they are entitled to a new trial because the jury ignored the instructions and rendered a compromise verdict, (2) the verdict should be vacated because the verdict form is fatally flawed for failing to include a causation special interrogatory on Plaintiff's § 1983 claim, and (3) the $100,001.00 judgment must be vacated in part as to the City of Modesto because the only claim for which the City was a defendant was the negligence claim and the jury found Plaintiff to be 95% at fault.

*1. Compromise Verdict*

Defendants correctly identify the standard for determining whether a verdict is an impermissible compromise verdict:

> "A compromise verdict is one reached when the jury, unable to agree on liability, compromises that disagreement and enters a low award of damages ….
> [S]uspicion should be aroused if the jury awards only nominal damages."
> (Citation.) In determining whether a jury reached a compromise verdict, courts look to the "totality of circumstances," and consider "any indicia of compromise apparent from the record and any other factors that may have caused a verdict for damages that would be inadequate if the jury actually found liability." (Citation.)
> These include "a close question of liability, a damages award that is grossly inadequate, and other circumstances such as length of jury deliberation."
> (Citation.)

*Helena v. City of San* Francisco, 2006 WL 1140953, * 7 (N.D. Cal. May 1, 2006) (citation omitted); Doc. 254 at 11-12. A compromise verdict is a "species of juror misconduct." *James v. Sheklanian*, 2010 WL 3504804, *4 (E.D. Cal. Sept. 7, 2010) (citing *Aczel v. Labonia*, 584 F.3d 52, 61 (2nd Cir. 2009)). That said, as is the case with an inconsistent verdict, the court has a duty to harmonize any seeming inconsistencies; a court may not disregard a jury's verdict and order a

6

new trial until it attempts to reconcile the jury's findings, by exegenesis if necessary." *See Duk v. MGM Grand Hotel, Inc.*, 320 F.3d 1052, 1058-1059 (9th Cir. 2003) (citation and internal quotation marks omitted). If a court concludes that a jury's verdict is compromised or inconsistent with the evidence, that verdict should not stand. *Romberg v. Nichols,* 970 F.2d 512, 521 (9th Cir. 1992) *vacated and remanded on other grounds by* 506 U.S. 1075 (1993).

The jury deliberated for two and a half days. *See* Docs. 210, 212, and 214. In that time, the jury sent a total of six notes to the Court. Docs. 211, 213, and 215. Those notes indicated (1) that, by the end of the first day, the jury was not in complete agreement about the verdict, Doc. 211; (2) that the jury was interested in hearing a read-back of testimony of several witnesses, Doc. 213 at 1; (3) that there was agreement regarding negligence liability but disagreement over excessive force liability, Doc. 213 at 2; (4) that the jury was "making headway" toward resolving the disagreement, Doc. 213 at 3; (5) that the jury had arrived at a verdict, Doc. 215 at 1; and (6) the jury had an inquiry regarding how the past medical expense award would be impacted by the determination of percentage of responsibility, Doc. 215 at 2.

Defendants direct the Court to five items in the record that they argue weigh in favor of finding that the jury returned a compromise verdict. First, Defendants argue that the duration of deliberation and the questions asked illustrate that the "jury was clearly not in agreement during deliberations and curious of how to reach a verdict despite the impasse…." Doc. 254 at 13. Second, Defendant contend that the fact the jury went from being divided—four to four—on the question of excessive force to coming to a unanimous verdict tends to indicate that the jury's verdict was a compromise. Defendants' first two arguments offer only one of several possible explanations of the jury's deliberation process. An equally valid narrative can be drawn from the duration of deliberations and questions asked by the jury: the jury began deliberations without any immediate consensus at to liability, the jury reviewed the testimony presented to it at trial, the jury found liability as to one count and continued to deliberate over the other, and finally, the jury returned a unanimous and consistent verdict as to both counts. Such an arc of jury deliberation is not uncommon and not indicative of compromise.

1       Third, Defendants contend that the jury's finding contributory negligence determination
2  that Plaintiff was 95% at fault is inconsistent with a finding of excessive force. Not so. A jury
3  can consistently find that a defendant officer used excessive force, that the officer was negligent,
4  and that the plaintiff was negligent and that such negligence contributed to his damages. *Bailey*
5  *v. County of Riverside*, 414 F.3d 1023, 1024-1025 (9th Cir. 2005). In fact, the evidence presented
6  in this case makes such a finding wholly reasonable. Officer Ziya testified that Plaintiff was
7  armed with a knife, refused to drop the knife when Officer Ziya commanded him to do so,
8  "assumed an aggressive stance with his right are cocked back, his hips squared, [and] his rear leg
9  … raised" as though he was going to charge. Doc. 264 at 22, 25. In that way, Plaintiff may have
10 contributed to Officer Ziya deciding to shoot. However, there was also testimony that Officer
11 Ziya followed Plaintiff into the house and continued to approach Plaintiff even though Officer
12 Ziya had no reason to believe that any other person was in the house. Doc 264 at 28, 33, Doc.
13 266 aat 48-49. There was also testimony to support that Officer Ziya fired at least two separate
14 volleys of gunfire; at some point during or immediately after the first volley Plaintiff turned
15 away from Officer Ziya. Doc. 264 at 21, 35-36. From that testimony, the jury could reasonably
16 have found that Officer Ziya was not justified in one or more of the shots fired.

17      Fourth, Defendant contends that the verdict form initially returned by the jury indicated
18 that they intended to award only $1.00 in damages and that such an award indicates that the jury
19 disregarded the evidence before it. Defendant correctly notes that the parties stipulated that
20 Plaintiff suffered $100,000.00 in past medical expenses. The jury's finished verdict form is as
21 follows:

**What are the damages of Brian Reed?**

| | |
|---|---|
| Past Medical Expenses | $100,000.00 |
| Future Medical Expenses | 0 |
| Past Lost Earnings | 0 |
| Future Lost Earnings | 0 |
| Noneconomic Damages | $1.00 |
| TOTAL | $1.00 |

That form was sent to the jury without any explanation of how to incorporate the past medical expenses into its total finding. When the jury returned its verdict the court read the $100,000.00 past medical expenses amount to as part of the verdict and all of the jurors agreed that the verdict read was his or her indivdidual verdict in all respects. Doc. 271 at 6-8. The Court then, in an abundance of caution, sent a supplemental verdict form to the jury, providing the jury a fillable box for past medical expenses. Docs. 220, 271 at 11. The jury was sent out at 1:52 p.m. Doc. 271 at 21. The jury then inquired as to whether "the stipulated amount of $100,000 [is] affected and/or recalculated based on the percentage of responsibility." Doc. 271 at 22. The Court instructed the jury that it was to decide upon a total amount; the calculation accounting for the percentage of responsibility would be completed by the Court. Doc. 271 at 23. The jury again returned to deliberate. Doc. 271 at 24. At 2:15 p.m. the jury returned with a unanimous verdict: the damages for past medical expenses for Plaintiff was $100,000. The relative speed with which the jury returned the special verdict form tends to indicate that it initially intended to award, $100,000. The calculation of "Total" initially returned appears to have been a reflection of the total of the fillable portions of the first verdict form. The Court is not convinced that the jury returned an initial verdict of $1.00 or that it disregarded the evidence before it.

Finally, Defendant argues that the jury's declination to award any past earnings, future lost earning, or future medical special damages to Plaintiff tends to indicate that jury disregarded the evidence before it. Doc 254 at 13-14. As explained in Section IV.A, *supra*, Plaintiff's evidence of injury was disputed. On the only topic where undisputed evidence was presented, past medical expenses, the jury awarded the full amount proven. The jury could reasonably have disbelieved—and in fact appears to have disbelieved—the evidence of lost earnings and future medical expenses. The jury's refusal to award damages on those topics is a clear indication of the weight that the jury gave to the evidence in support of those damages.

This Court does not find that the jury's verdict was a result of impermissible compromise. Defendants' motion for new trial on that ground will be denied.

///

///

9

*2. Verdict Form*

Defendants second ground for challenging the validity of the judgment is based on the absence in the verdict form of a special interrogatory regarding causation as to the § 1983 claim. As Defendant correctly notes, a district court has broad discretion regarding the wording of instructions and interrogatories so long as the law is fairly presented to the jury. *United States v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1998); *see* Fed. R. Civ. P. 49. It is undisputed that causation is a necessary element for a § 1983 claim. *See*, *e.g.*, *Arnold v. International Business Machines*, 637 F.2d 1350, 1355 (9th Cir. 1981). As such, the Court instructed the jury that "[i]n order to establish that the acts of the defendant Officer Ronny Ziya deprived the plaintiff of his particular rights under the United States Constitution … the plaintiff must prove by a preponderance of the evidence that the acts were so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury." Doc. 218 at 34; *see* Ninth Circuit Model Instruction 9.8 (2007).  Defendant suggested a verdict special interrogatory that inquired whether "Officer Ziya's use of force [was] a substantial factor in causing harm to Brian Reed[.]" Defendants' proposed interrogatory was unnecessary. The jury was instructed that it could not find that Officer Ziya used excessive force unless it first found by a preponderance of the evidence that Officer Ziya's conduct was the moving force behind Plaintiff's injury. The Court was within its discretion to refuse to include Defendants' proposed special interrogatory. The absence of such a special interrogatory does not render the verdict flawed.[2]

///

---

[2] Defendants also suggest that the jury may have found only that the fourth shot was the only excessive force. If that were the case, they contend, the jury might have also found that the final shot was excessive force but that it did not proximately harm Plaintiff because it missed. The situation presented by Defendants is inconsistent with the instruction given. A jury could not find liability based on a missed shot. Assuming that the jury treated the separate volleys as separate incidents—a theory never argued to the jury—the jury could only find liability if it first found by a preponderance of the evidence that that acts occurring in one of the incidents both violated the Fourth Amendment and was a cause of the ultimate injury. A missed shot is not a seizure under the Fourth Amendment unless a suspect yields to the showing of authority, *Lawson v. McNamara*, 438 Fed.Appx. 113, 116 (3rd Cir. 2011) (finding that firing at a suspect and missing was not a seizure); *see also United States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997) ("For purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen."); *But see Robinson v. Solano County*, 278 F.3d 1007, 1013-1014 (9th Cir. 2002) (noting that pointing a gun at a suspect during an actual seizure could be excessive force if the situation did not justify that level of force). Similarly, a missed shot could not have caused the injury complained of here.

*3. Judgment Against the City of Modesto*

Defendants accurately describe judgment entered against the City of Modesto and Officer Ziya; judgment was entered in favor of Plaintiff and against Defendants on Plaintiff's section 1983 claim and his negligence claim in the amount of $100,001.00. Defendant is also correct that Plaintiff's only claim against the City of Modesto was the negligence claim. *See also* Cal. Gov. Code § 815.2 ("A public entity is liable for injury proximately caused by an act … of an employee of the public entity within the scope of his [or her] employment if the act or omission would … have given rise to a cause of action against the employee….") For that claim, the jury found Plaintiff to be 95% at fault and Defendant Ziya to be only 5% at fault. The section 1983 claim was alleged only against Defendant Ziya in his individual capacity. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983."); *Fogel v. Collins*, 531 F.3d 824, 834 (9th. Cir. 2008).

Plaintiff relies upon California Civil Code section 1431.2 for the proposition that only non-economic damages are subject to apportionment based on Plaintiff's percentage of fault. Plaintiff is incorrect. Section 1431.2 does not, as Plaintiff suggests, require that all economic damages be paid in full by a defendant without respect to a plaintiff's percentage of fault. In fact, such a conclusion is contrary to California law. Section 1431.2 allows joint and several liability between defendants for economic damages but apportions non-economic damages between defendants for their respective percentage of fault. *C.B. v. City of Sonora*, 769 F.3d 1005, 1031-1032 (9th Cir. 2014) (citing Cal. Civ. Code § 1431.2(a)). It relates only to whether a Plaintiff may collect (a) the entirety of a judgment from a single defendant or (b) only the percentage of the judgment consistent with that specific defendant's percentage of fault. Under the California comparative fault rules, "liability for damage [is] borne by those whose negligence caused it in direct proportion to their respective fault." *Willis v. City of Fresno*, 2014 WL 1419239, *12 (E.D. Cal. Apr. 14, 2014) (citations omitted). Officer Ziya was only 5% at fault for Plaintiff's injuries. Therefore, the City of Modesto can only be held vicariously liable for 5% of Plaintiff's injuries. Judgment against the City of Modesto should be in the amount of $5000.05. The Court's prior judgment was in error. Accordingly, Defendants' motion to amend judgment will be granted.

V. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for new trial is DENIED;
2. Defendants' motion for new trial and/or to vacate judgment is DENIED IN PART and GRANTED IN PART as follows:
   a. Defendants' motion to vacate the judgment as the result of a compromise verdict is DENIED;
   b. Defendants' motion to vacate the judgment based on an alleged error in the verdict form is DENIED;
   c. Defendants' motion to amend the judgment to reflect that the City of Modesto is only responsible for $5000.05—representing five percent of the total damages—is GRANTED. An amended judgment will issue with this Order reflecting as follows: Judgment is entered in favor of Plaintiff Brian Reed and against Defendant Ziya on Plaintiff's section 1983 claim in the amount of $100,001.00 and in favor of Plaintiff Brian Reed and against Defendants Ziya and City of Modesto on negligence claim in the amount of $5000.05.

IT IS SO ORDERED.

Dated:   March 18, 2016                              _____
                                                     SENIOR DISTRICT JUDGE